# 16-3833

## United States Court of Appeals

*for the*

## Second Circuit



WELLS FARGO ADVISORS, LLC,

*Petitioner-Appellant,*

— against —

LIVIA SAPPINGTON, EWA KELLY, AKA EVA KELLY,
and PATRICK LABORDE,

*Respondents-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

### REPLY BRIEF OF PETITIONER-APPELLANT
### WELLS FARGO ADVISORS, LLC

Kenneth J. Turnbull
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000
*Attorneys for Petitioner-Appellant*
*Wells Fargo Advisors, LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF THE ARGUMENT ...................................................................1

ARGUMENT ....................................................................................................3

I.     THE SUPREME COURT HAS CLEARLY INDICATED THAT THE DETERMINATION OF CLASS ARBITRABILITY IS A GATEWAY ISSUE. ................................................................................4

II.    CLASS ARBITRABILITY CLEANLY FALLS INTO THE CATEGORIES OF GATEWAY ISSUES IDENTIFIED BY THE SUPREME COURT AND THE SECOND CIRCUIT .................................9

     A.    The Availability Of Class Arbitration Implicates Whether An Agreement Encompasses Non-Signatory Class Members...................9

     B.    The Availability Of Class Arbitration Implicates The Type Of Controversy At Issue.........................................................................12

     C.    The Availability Of Class Arbitration Implicates The Validity Of The Parties' Agreement To Arbitrate With Absent Class Members........................................................................................14

III.    THE DISTRICT COURT ERRED BY APPLYING A PRESUMPTION OF ARBITRABILITY TO THE ISSUE OF WHO DECIDES WHETHER CLASS ARBITRATION IS AVAILABLE. .........16

IV.    THERE IS NO CLEAR AND UNMISTAKABLE EVIDENCE OF AN AGREEMENT TO SUBMIT THE GATEWAY QUESTION OF CLASS ARBITRABILITY TO AN ARBITRATOR. .................................17

CONCLUSION.................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................ 1, 5, 7, 11

*BG Grp. PLC v. Republic of Argentina*,
    134 S. Ct. 1198 (2014) ............................................................ 4, 6, 8

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
    809 F.3d 746 (3d Cir. 2016) ............................................................ 19

*CTS Corp. v. Dynamics Corp. of Am.*,
    481 U.S. 69 (1987) ............................................................ 5

*Dell Webb Communities, Inc. v. Carlson*,
    817 F.3d 867 (4th Cir. 2016) ............................................................ 7

*DeStefano v. Emergency Hous. Grp., Inc.*,
    247 F.3d 397 (2d Cir. 2001) ............................................................ 6

*Emilio v. Sprint Spectrum LP*,
    508 F. App'x 3 (2d Cir. 2013) ............................................................ 15

*Eshagh v. Terminix Int'l Co., L.P.*,
    588 F. App'x 703 (9th Cir. 2014) ............................................................ 7

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ............................................................ 17

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) ............................................................ 3

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003) ............................................................ passim

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ............................................................ passim

*In re Am. Ex. Merchants' Litig.*,
    667 F.3d 204 (2d Cir. 2012), *reversed on other grounds, Am. Ex.*
    *Co. v. Italian Colors Rest.*, 133 S. Ct 2304 (2013) ............................................ 15

*Opalinski v. Robert Half Int'l Inc.*,
    761 F.3d 326 (3d Cir. 2014) ............................................................................ 7, 8

*Reed Elsevier, Inc. ex rel LexisNexis Div. v. Crockett*,
    734 F.3d 594 (6th Cir. 2013) ......................................................................... 4, 7

*Smith v. Bayer Corporation*,
    564 U.S. 299 (2011) .......................................................................................... 11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ................................................................................... passim

*VRG Linhas Aeras S.A. v. MatlinPatterson Glob. Opportunities*
    *Partners II L.P.*,
    717 F.3d 322 (2d Cir. 2013) ............................................................. 3, 9, 10, 12

**STATUTES**

FLSA ......................................................................................................... 11, 12

## SUMMARY OF THE ARGUMENT

In its opening brief, Wells Fargo demonstrated both that class arbitrability is presumptively an issue for a court and that the Agreements do not ***clearly and unmistakably*** demonstrate intent to submit this issue to an arbitrator. In opposition, Respondents have frozen time in 2003 and ignore the instructive guidance of the Supreme Court that has been issued since then. The Supreme Court's binding decisions in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) expound at length on the differences between class and bilateral arbitration, and make unequivocal pronouncements that all but explicitly hold that these differences are substantial enough that they cannot be treated as merely procedural. Rather than be guided by this binding precedent, Respondents urge this Court to instead rely on *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), a plurality decision that the Court has plainly disavowed.

Courts have held that determining a clause's validity or the scope of an arbitration clause – including which parties and which types of controversies are encompassed – is an issue presumptively for courts. Wells Fargo showed in its brief that the class arbitrability determination implicates both issues. Respondents argue that the question of whether classwide arbitration is available does not implicate which parties are covered by an arbitration clause, and create from whole

1

cloth a narrow definition of what constitutes a "type of controversy" that has no basis in the caselaw.  Those arguments fail to withstand scrutiny.

In analyzing whether the Agreements clearly and unmistakably delegate the class arbitrability determination to an arbitrator, Respondents barely acknowledge the "clear and unmistakable" standard at all, instead invoking a traditional contract analysis.  That analysis is insufficient here, and Respondents cannot escape the fact that only by making considerable inferences can the Agreements be construed as delegating the class arbitrability determination to an arbitrator.  Where clear and unmistakable evidence is required, those inferences are inadequate.  As such, the district court should have decided that there is no clear and unmistakable evidence that the parties agreed to arbitrate the question of class arbitration.

## ARGUMENT

The question of "who decides" whether classwide arbitration is available is a two-step inquiry.

The first step asks whether the issue is a gateway "question of arbitrability" as opposed to one of mere procedure. Gateway issues of arbitrability include disputes as to the scope or validity of an arbitration clause. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). Determinations of an arbitration agreement's scope have been held to encompass disputes as to "which parties" and what "types of controversies" are governed by an agreement. *VRG Linhas Aeras S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 n. 2 (2d Cir. 2013); *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002). Determinations of an agreement's validity involve disputes as to the enforceability of the clause. *VRG*, 717 F.3d at 325 n. 2.

The second step looks to the agreement itself to determine whether the clause delegates the issue to an arbitrator. If the issue is a question of arbitrability, it may ***only*** be sent to the arbitrator where there is clear and unmistakable evidence that the parties intended to do so. Only if the issue is one of mere procedure is there a presumption favoring arbitrability. *Howsam ,* 537 U.S. at 84 ("'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.") (internal

quotation marks omitted); *BG Grp. PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1202 (2014) ("[C]ourts presume that the parties intend … arbitrators to decide disputes about the meaning and application of procedural preconditions for the use of arbitration.").

As Wells Fargo has demonstrated and reiterates below, the broader issue of classwide arbitrability is a gateway issue presumptively for a court, and the Agreements at issue do not clearly and unmistakably delegate the issue to an arbitrator.

## I. THE SUPREME COURT HAS CLEARLY INDICATED THAT THE DETERMINATION OF CLASS ARBITRABILITY IS A GATEWAY ISSUE.

"[T]he [Supreme] Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one." *Reed Elsevier, Inc. ex rel LexisNexis Div. v. Crockett*, 734 F.3d 594, 598 (6th Cir. 2013). Indeed, "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it simply by agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen*, 559 U.S. at 685. The differences between classwide and bilateral arbitration are fundamental – much more than mere procedural details. These fundamental differences implicate the due process rights of absent parties (*Stolt-Nielsen,* 559 U.S. at 685-87), the arbitral forum's presumption of confidentiality (*Id.* at 686), as well as the speed,

cost and efficiency of the proceedings (*Concepcion*, 563 U.S. at 349-50).

Compounded with the high stakes implicated by class action litigation and the

limited judicial review afforded arbitral rulings, those differences are enough for

the Court to deem arbitration "poorly suited to the higher stakes of class litigation."

*Concepcion*, 563 U.S. at 350.

Respondents do not substantively address the Supreme Court's efforts to

underline and highlight these differences, nor do they attempt to explain how those

differences could conceivably be characterized as simply procedural. Instead, they

argue that neither *Stolt-Nielsen* nor *Concepcion* directly reached the "who decides"

issue.[1] Respondents-Appellees Brief ("Resp. Br.") at 20. That is, of course,

undisputed, and does nothing to address the fact that the Supreme Court has

nonetheless provided clear and unequivocal guidance on the exact issue presented

by this appeal. Respondents urge this Court to ignore these pronouncements, and

instead urge this Court to adopt the nonbinding plurality decision in *Bazzle*. As a

threshold matter, it is axiomatic that the rationale of the *Bazzle* plurality is not

binding on this Court or any other. *See CTS Corp. v. Dynamics Corp. of Am.*, 481

U.S. 69, 82 (1987) ("As the plurality opinion … did not represent the views of a

---

[1] Respondents also attempt to distinguish the Supreme Court caselaw by saying that "[h]ere, in sharp contrast, the parties *agreed* to allow class procedures, as the arbitrator found in his exhaustive analysis of the agreements." Resp. Br. at 21. This contention displays a fundamental misunderstanding of this dispute. That the question of class arbitrability was before the arbitrator at all is *the very issue giving rise to this appeal*. The arbitrator's decision therefore does not – and cannot – weigh into the analysis here.

majority of the Court, we are not bound by its reasoning."); *DeStefano v. Emergency Hous. Grp., Inc.*, 247 F.3d 397, 418 (2d Cir. 2001) (noting that a plurality opinion "do[es] not stand as binding precedent"). Moreover, the *Stolt-Nielsen* majority went out of its way to disabuse parties of the notion that *Bazzle* settled the "who decides" question. 559 U.S. at 680 ("For one thing, the parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration. In fact, however, only the plurality decided that question.") (internal citation omitted). This statement was made despite the fact that (as Respondents are eager to note) the question itself was not before the Court. *See* Resp. Br. at 10, 20.

Relying on *Bazzle*, Respondents argue that determining whether parties consented to class actions is merely a procedural or "claims-processing" issue that should be relegated to the arbitrator. Ignoring the Supreme Court's clear pronouncements over the past several years, Respondents argue that class arbitrability is a procedural question or "claims-processing issue" because "like the clause reviewed in *BG Grp., PLC*, 'parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration.'" Resp. Br. at 18, citing *BG Grp., PLC*, 134 S. Ct. at 1207. However, procedural questions for an arbitrator, which only arise after a party's existing obligation to arbitrate has been triggered, include things like "time

limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate." *Howsam*, 537 U.S. at 85. As explained at length in Wells Fargo's moving brief, class arbitrability is much more than such a procedural matter and is certainly not a "procedural precondition for the use of arbitration." *See* Wells Fargo's opening Brief ("Br.") at 17. Instead, the class arbitrability question is determinative of the scope of the parties' obligation to arbitrate and the validity of the agreement. Therefore, the issue is properly to be decided by the court.

The Supreme Court's guidance has been heeded by every Circuit Court to address this issue, as they have unfailingly held class arbitrability to be an issue for a court. *See* Br. at 26-27; *Reed Elsevier*, 734 F.3d 594; *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326 (3d Cir. 2014); *Dell Webb Communities, Inc. v. Carlson*, 817 F.3d 867 (4th Cir. 2016); *Eshagh v. Terminix Int'l Co., L.P.*, 588 F. App'x 703 (9th Cir. 2014). Respondents insist that the fact that the Supreme Court did not reach the "who decides" issue directly in *Stolt-Nielsen* and *Concepcion* indicates that all of those courts "misread" those cases. Resp. Br. at 23-24. Of course, each of those courts recognized that the cases did not decide the issue, and were instead relying on the unequivocal guidance articulated by the Supreme Court in *Stolt-Nielsen* and *Concepcion*. In *Opalinski*, for example, while noting that "*Stolt–Nielsen* expressly state[s] that the Supreme Court has not yet resolved the 'who decides' issue," the Third Circuit held that "the Court's line of post-*Bazzle*

7

opinions, however, indicates that, because of the fundamental differences between class and bilateral arbitration, and the consequences of proceeding with one rather than the other, the availability of classwide arbitrability is a substantive gateway question rather than a procedural one." 761 F.3d at 332, 335. It is Respondents, not Wells Fargo and the unanimous Circuit Courts, who misapprehend the implications of the caselaw since *Bazzle*.

In sum, the Supreme Court has taken steps to explicitly distance itself from *Bazzle* while holding that the differences between class and bilateral arbitration are not merely matters of "procedural mode."[2] *Stolt-Nielsen*, 559 U.S. at 687. The Supreme Court has made clear, affirmative statements indicating that class arbitrability determinations are not "claims-processing" issues as Respondents insist, but rather "a matter of such elevated importance that it is to be decided by the courts." *BG Grp. PLC*, 134 S. Ct. at 1211.

---

[2] Respondents attempt to minimize this language by implying that the Court was speaking only in the context of the arbitration agreement at issue. Resp. Br. at 22 n. 5. That is not the case. The Court was describing the nature of the differences between class and bilateral arbitration, and rejecting the dissent's contention that those distinctions could be characterized as procedural. *See Stolt-Nielsen*, 559 U.S. at 687 ("The dissent minimizes these crucial differences by characterizing the question before the arbitrators as being merely what 'procedural mode' was available to present AnimalFeeds' claims. If the question were that simple, there would be no need to consider the parties' intent with respect to class arbitration.") (internal citations omitted).

**II.    CLASS ARBITRABILITY CLEANLY FALLS INTO THE
CATEGORIES OF GATEWAY ISSUES IDENTIFIED BY THE
SUPREME COURT AND THE SECOND CIRCUIT.**

It is not simply the overt statements of the Supreme Court on the matter

which dictate that class arbitrability is a gateway issue for judicial determination.

Indeed, there is a presumption that courts, not arbitrators, will decide questions as

to the scope of an arbitration clause – including questions of which parties are

encompassed by a clause and whether a clause applies to a particular "type of

controversy" – and questions as to a clause's validity.  *Howsam*, 537 U.S. at 84.

The class arbitrability determination implicates both issues.

A.    *The Availability of Class Arbitration Implicates Whether An
Agreement Encompasses Non-Signatory Class Members.*

Whether class arbitration is permitted by an agreement is presumptively for

judicial determination because it requires a determination of *whose* claims may be

decided in arbitration.  *VRG*, 717 F.3d at 325 n. 2 (disputes about "which parties …

the clauses of an arbitration agreement encompass" are presumed to be decisions

for a court).  In other words, this presumptively judicial decision is determinative

of whether an arbitration clause is applicable to its signatory parties (only) or to an

entire class (which could include individuals who never agreed to arbitrate any

issue).

Respondents misapprehend the Supreme Court and Second Circuit precedent

with respect to this issue.  Instead they argue, quite literally, that pending the class

arbitrability determination, "only the named representatives themselves are parties to the arbitration, so no other parties are before the arbitrator at the clause construction stage or bound by its rulings." Resp. Br. at 27. This semantic argument ignores the clause construction procedure as it pertains to class arbitrability, and disregards Supreme Court and Second Circuit precedent.

While Respondents are technically correct that non-signatory class members are not *currently* "before the arbitrator," their argument misses the point. The whole reason the parties are before this Court is because Respondents are affirmatively seeking to arbitrate claims on behalf of the non-signatory class members, which would bring them "before the arbitrator." As such, and as this Court has explained, questions "about which parties … the clauses of an arbitration agreement encompass … are ones over the arbitration agreement's scope," and are presumptively for the court. *VRG*, 717 F.3d at 325 n. 2 (emphasis omitted). Thus, the question is not which parties are *presently and literally* "before the arbitrator," but whether the class arbitrability analysis is determinative of which parties *will be* arbitrating their claims. Here, the class arbitrability analysis will determine whether only the three Respondents will arbitrate their individual claims or whether potentially thousands of individuals will arbitrate their claims. *See Stolt-Nielsen*, 559 U.S. at 686 (class arbitration "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes

between hundreds or perhaps even thousands of parties"). As such, the question of "who is bound" by an arbitration agreement is to be decided by the courts.

In their attempt to trammel the rights of non-signatories, Respondents also contend that an arbitrator's class arbitrability determination "applies only to the parties before it." Resp. Br. at 27. That statement is false. The potentially preclusive effects of class action approval are well established. Respondents' own caselaw, selectively quoted to the point of being disingenuous, makes this point clear. Respondents quote the Supreme Court in *Smith v. Bayer Corporation*, 564 U.S. 299, 315 (2011) for the proposition that "[n]either a *proposed* class action nor a *rejected* class action may bind non-parties." Resp. Br. at 27 (emphasis added). What they omit is the next sentence, which says that "[w]hat does have this effect *is a class action approved under Rule 23*." *Smith*, 564 U.S. at 315 (emphasis added). There is no basis for their argument that the class arbitrability determination somehow evades any preclusive effect and that therefore the due process rights of non-signatory class members need not be considered.[3] The determination can have the effect of binding parties and non-parties alike.[4]

---

[3] Of course, the significance of preclusion in the arbitration context is amplified in that a decision by the arbitrator regarding classwide arbitrability is subject to limited appellate review. *See Stolt-Nielsen*, 559 U.S. at 685. And again, this limited appellate review is one of the reasons the Supreme Court has found that classwide arbitration is "poorly suited to the higher stakes of class litigation." *Concepcion*, 563 U.S. at 350.

[4] Respondents try to downplay the significance of this preclusive effect by noting that the opt-in mechanism of the FLSA may protect the interests of third parties. Resp. Br. at 29. This point is

Respondents speculate that "any class that the arbitrator **might** certify here **could** be limited to other Financial Advisors who have also evinced consent to arbitrate their employment law claims with Wells Fargo." Resp. Br. at 27-28 (emphasis added). Of course, an arbitrator may well identify a much broader class, potentially including non-parties who have not agreed to arbitrate the issue at all. Such an award could only be challenged by seeking *vacatur*, subjecting the challenging party (or non-party) to the high bar governing such proceedings.

To claim that this is not a question of which parties are encompassed by an arbitration agreement is to ignore that the arbitrator's decision is *de facto* applicable to absent class members.

B.    *The Availability of Class Arbitration Implicates the Type of Controversy At Issue.*

The Supreme Court in *Howsam* held that questions about what "type of controversy" is at issue in an agreement are presumptively for a court because such questions concern an arbitration agreement's scope. *Howsam*, 537 U.S. at 84 ("[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court."). The Supreme Court's

---

irrelevant for two reasons. First, even if the utilization of an opt-in mechanism were assured in the arbitral context (which it is not), the availability of classwide proceedings is still a gateway question because it still determines "which parties" are encompassed by the arbitration clause. *VRG*, 717 F.3d at 325 n.2. Second, Respondents' argument regarding the opt-in "protections" of the FLSA is disingenuous where they have, for apparently strategic reasons, sought to "certify" an "opt-out" class even for alleged FLSA violations. JA-47 (noting that the claimants bring the action "as an opt-out class arbitration"). Having chosen to do so, Respondents cannot now ignore their strategic decision as if it were never made.

decisions have made it clear that "type of controversy" is not confined simply to different causes of action.  Br. at 21-22.  The Supreme Court has also made it clear that classwide arbitration and bilateral arbitration are "fundamental[ly]" different. *Stolt-Nielsen*, 559 U.S. at 686.  Given the Supreme Court's articulation of the significance of the differences between class and bilateral arbitration, there can be no doubt that class arbitration is properly deemed a different "type of controversy" than bilateral arbitration.

Respondents misapprehend this point.  To start, they ignore the Supreme Court's analysis with respect to the fundamental differences between class and bilateral arbitration and claim that the "type of controversy" language refers only to "substantives dispute[s]."  Resp. Br. at 32.  This narrow definition has absolutely no basis in the caselaw.[5]  Indeed, Wells Fargo's opening Brief specifically addressed this point, noting that "it is apparent that the definition is broad enough that it does not refer simply to different causes of action."  Br. at 21.

Further, Wells Fargo has not argued that "'fundamental' issues about arbitration must be decided by courts."  Resp. Br. at 30.  Rather, Wells Fargo merely articulated the fact that because the Supreme Court has held that the distinction between class and bilateral arbitration is "fundamental" (*Stolt-Nielsen*,

---

[5] Respondents misleadingly combine two separate quotations from *Bazzle* to make it appear as if the Court said that "type of controversy" refers to the "underlying dispute between the parties." Resp. Br. at 32.  The *Bazzle* Court made no such holding.

559 U.S. at 686), class arbitration is properly deemed a different "type of controversy" than bilateral arbitration – classwide and bilateral arbitration cannot be fundamentally different and yet the same type of controversy.

C.   *The Availability of Class Arbitration Implicates the Validity of the Parties' Agreement to Arbitrate With Absent Class Members.*

Because "arbitration is a matter of consent," parties cannot be compelled to arbitrate a dispute without a valid agreement to do so.  *Stolt-Nielsen*, 559 U.S. at 684.  A determination of class arbitrability, therefore, inherently incorporates a determination as to the validity of the agreement to arbitrate with absent class members.  Yet, Respondents argue that determinations of "validity" apply only to "whether the arbitration provision is subject to defenses that render it unenforceable."  Resp. Br. at 29.  Respondents are once again operating from an excessively narrow definition and do not contend with Wells Fargo's arguments.

Respondents do not address the fact that sending disputes of non-parties to an arbitrator assumes, without deciding, the validity of the Agreements with the three Respondents to assert and pursue the claims of these non-parties.  Nor do they address the fact that sending non-signatories' disputes to an arbitrator interferes with each individual's rights. Where an arbitrator allows for classwide proceedings, he is deciding that the agreement will be enforced as to non-parties to that agreement.  This is true whether or not a defense to enforceability has been raised *per se*.

Wells Fargo also pointed out that this Court's prior rulings as to class action waivers are applicable and instructive here, as determinations as to the enforceability of class action waivers seek to answer the same question as determinations of class arbitrability generally: whether a given action may proceed as a class action and be binding on a class in light of the relevant arbitration agreements. Br. at 25-26; *See Emilio v. Sprint Spectrum LP*, 508 F. App'x 3, 6 (2d Cir. 2013). Respondents argue that the cases are not instructive, because the question in those cases was whether such waivers were themselves enforceable. Resp. Br. at 33-34. But on the threshold issue of who decides, this is a distinction without a difference. A clause which does not grant a party the right to arbitrate on a class basis serves the same purpose as a clause in which that party specifically waives that right. This Court should not permit mere differences as to form to dictate the forum in which the question is resolved, and this Court has consistently found that challenges to class action waivers in arbitration agreements present gateway questions of arbitrability. *See In re Am. Ex. Merchants' Litig.*, 667 F.3d 204, 210 (2d Cir. 2012) (reiterating its prior holding "that the issue of the class action waiver's enforceability was a matter for the court, not the arbitrator."), *reversed on other grounds, Am. Ex. Co. v. Italian Colors Rest.*, 133 S. Ct 2304 (2013).

### III. THE DISTRICT COURT ERRED BY APPLYING A PRESUMPTION OF ARBITRABILITY TO THE ISSUE OF WHO DECIDES WHETHER CLASS ARBITRATION IS AVAILABLE.

As discussed above, determining "who decides" whether classwide arbitration is available is a two-step inquiry. The first step is establishing whether the issue is a "question of arbitrability." The second step is determining whether the *specific* dispute at hand should be submitted to arbitration or a court. The standard for the second step depends on the outcome of the first – if the question is not one of arbitrability, the dispute is presumptively for an arbitrator. If the issue is a question of arbitrability, however, that presumption falls away, and the dispute may *only* be submitted to arbitration based upon a showing of clear and unmistakable intent to do so. *Howsam*, 537 U.S. at 84 (a question of arbitrability is reserved "for judicial determination unless the parties clearly and unmistakably provide otherwise.").

The District Court erred in holding that the breadth of the specific clause at issue created a presumption of arbitrability. *See* Br. at 27-30. That analysis improperly merges the distinct steps of the "who decides" inquiry. The applicable presumption is determined by the first step, and applied in the second. Respondents' contention that the District Court correctly applied the law does not confront this point at all, and therefore fails for the same reason. Had the court below approached the inquiry correctly, it would have established the applicable

presumption before reaching the language of the clause itself.  This oversight was error, and served to circumvent the necessary application of the clear and unmistakable standard.

## IV.  THERE IS NO CLEAR AND UNMISTAKABLE EVIDENCE OF AN AGREEMENT TO SUBMIT THE GATEWAY QUESTION OF CLASS ARBITRABILITY TO AN ARBITRATOR.

In the context of a gateway issue such as this one, a court must decide the question of class arbitration unless the parties have "clearly and unmistakably" demonstrated their intent to submit that question to an arbitrator.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995).  Here, there is no indication, let alone clear and unmistakable evidence, that the parties agreed to submit the question of class arbitrability to an arbitrator.

Although Respondents ostensibly acknowledge this standard, much of their analysis pays it no mind, instead operating as if the matter were one of ordinary contractual interpretation.  Moreover, Respondents wave away the common sense conclusion that the Supreme Court's concerns as to the significance of the difference between class and bilateral arbitration should weigh on what "clearly and unmistakably" evinces intent to submit the matter to a forum with minimal judicial review.  Respondents' question as to why this issue deserves to be treated different than any other (Resp. Br. at 41) can be answered very simply:  doing so is necessary and appropriate in light of Supreme Court precedent.

As noted in Wells Fargo's opening brief, the undisputedly bilateral language contained within the Agreements limits the clause to matters "arising between [Respondents] and Wells Fargo Advisors." Br. at 32; JA-33, 41. Thus, the analysis of how broad the Agreements' delegation to an arbitrator is must at bottom be viewed through this narrow lens. Yet, in the face of this undisputedly bilateral language, Respondents argue that somehow the term "you" is ambiguous, and that the language was used for "drafting convenience." Resp. Br. at 39. But the arbitrability inquiry requires *clear and unmistakable* evidence – not "ambiguous" evidence or an argument that the bilateral language was simply a "convenient" drafting tool that somehow masks clear and unmistakable evidence to the contrary. The Respondents' contention that "you" is a flexible term and the speculation as to the drafters' motives for using the term simply support the fact that there is no *clear and unmistakable* evidence here.[6] Respondents do little more than attempt to cast some small doubt on the Agreements' bilateral nature. That is not enough.

Respondents also point to the fact that "broad" language in arbitration agreements is typically deemed to delegate questions of arbitrability to an

---

[6] Even if the current question called for pure contractual interpretation, it is not made clear by Respondents how the "context" of a contract between an employee and employer might call for a flexible reading of plainly bilateral terms. Nor does the throwaway argument that "the singular typically includes the plural" apply in this context, as pluralizing "you" does not in any way operate to encompass a potential class. *See* Resp. Br. at 40.

arbitrator.  Resp. Br. at 36-38.  This argument cannot stand where, as described above, that "broad" language is subsequently qualified by bilateral language that does not cover the relevant dispute.

Finally, Respondents argue that the Agreements' incorporation of the 1993 AAA rules constitutes clear and unmistakable delegation of the class arbitrability determination to the arbitrator.  To combat the fact that the 1993 Rules do not provide for such a delegation, Respondents point to the fact that those rules state that "any amendment of [the rules] shall apply in the form obtaining at the time the demand for arbitration … is received by the AAA."  Resp. Br. at 43-44; JA-177.  Later amendments, Respondents point out, delegate the issue to an arbitrator.  As Wells Fargo noted in its opening papers (to no substantive response from Respondents), this reading nullifies the clear intent of the parties.  Br. at 33-35.  The Agreements were executed in 2012 and 2013, and nonetheless refer to rules from 1993, which do not delegate the question of class arbitrability to an arbitrator.  To read the Agreements as instead incorporating the most recent AAA rules is to write a term out of the contract.  At best, that conclusion requires a series of dubious inferences, creating a "daisy-chain of cross-references" that in no way evidence a clear and unmistakable intent.  *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016).  Where such inferences are required, it cannot be reasonably contended that the Agreements "clearly and

unmistakably" express an intent to delegate the class arbitrability determination to an arbitrator.  Accordingly, the question of class action arbitration is a question for the court.

**CONCLUSION**

Appellant respectfully requests that the decision and order of the District Court be reversed, and an order be entered directing that the District Court determine whether class arbitration is available under the applicable Agreements.

Dated:  April 11, 2017
        New York, New York

MORGAN, LEWIS & BOCKIUS LLP

By: _/s/ Kenneth J. Turnbull_

Kenneth J. Turnbull
101 Park Avenue
New York, New York 10178
(212) 309-6000

_Attorneys for Petitioner-Appellant_
_Wells Fargo Advisors, LLC_

**Certificate of Compliance with
Type-Volume Limitation,
<u>Typeface Requirements and Type Style Requirements</u>**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,750 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14 point Times New Roman font.

Dated:  April 11, 2017

Signed:  *<u>/s/ Kenneth J. Turnbull</u>*
Kenneth J. Turnbull

*Attorney for Petitioner-Appellant*

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 11th day of April, 2017, I caused a true copy of the Reply Brief of Petitioner-Appellant Wells Fargo Advisors, LLC to be served on Respondents-Appellees via ECF.  I affirm that the foregoing statements are true, under penalty of perjury.


*/s/ Kenneth J. Turnbull*
—————————————————————
Kenneth J. Turnbull